## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY DEVANE, on behalf of herself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) CLASS ACTION |
| v. | ) ) |
| L'OREAL USA, INC, | ) JURY TRIAL DEMANDED ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Tammy DeVane ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant, L'Oreal USA, Inc. ("L'Oreal" or "Defendant"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## INTRODUCTION

1.      This is a nationwide class action brought by Plaintiff on behalf of herself and other similar situated consumers who purchased L'Oreal Paris EverSleek Sulfate Free Keratin Caring Shampoo or L'Oreal Paris EverSleek Sulfate Free Keratin Caring Conditioner (collectively, the "Products" or "EverSleek Keratin Caring Products") for personal or household use and not for resale ("Class Members").

2.      Defendant manufactures, advertises, markets, distributes and sells the EverSleek KeratinCaring Products.  As alleged with specificity herein, through an extensive, uniform, nationwide advertising and marketing campaign, Defendant mislead the consumer that the Products

contained keratin for chemically processed hair. In particular, on the Product labels and through uniform advertising and marketing campaigns, Defendant make the following representations about the Products:

- "Keratin Caring"

- "Reparative Smoothing"

- "Cares for the essential protein and keratin that is found in hair."

- "Smooth Care System"

- "Repairs, smoothes, and improves hair's texture"

- "Gentle on processed hair"

3.       Keratin is a protein naturally present in human hair, skin and nails. It is made by cells called keratinocytes and consists of amino acids. Its primary function is to protect the cells in hair, skin and nails from damage or stress.

4.       Through their uniform, nationwide advertising campaign, including the name of the Ever Sleek KeratinCaring Product line and the names of each Product, Defendant has led consumers to believe that their EverSleek KeratinCaring Products actually contain keratin and will confer the claimed benefits of keratin to the consumer.

5.       In reality, the EverSleek KeratinCaring Products *do not contain any keratin at all* and are incapable of providing the claimed benefits of keratin to the consumer.

6.       Saying the Products are "Keratin Caring" when they contain no keratin, and repeating that representation with additional statements on the Product labels and in a uniform advertising campaign, is unlawful. The EverSleek Keratin Caring Products' labels are false, deceptive and misleading, in violation of the Federal Food Drug & Cosmetics Act and its parallel state statutes,

and every state warranty, consumer protection, and product labeling law throughout the United States.

7.      Defendant's misbranding is intentional and renders the Products less valuable or even worthless. If Defendant had disclosed to Plaintiff and putative Class Members that its EverSleek Keratin Caring Products *do not contain any keratin at all*, and that the Products do not provide the claimed benefits of keratin, Plaintiff and putative Class Members would not have purchased the Products or they would have paid less for the Products.

8.      As a result of Defendant's misconduct and misrepresentations, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

## PARTIES

9.      Plaintiff Tammy Devane is and was at all times relevant to this matter a resident and citizen of the state of Florida.

10.      Defendant L'Oréal USA, Inc., is a Delaware corporation.  At all times relevant to this matter, L'Oréal USA, Inc. was a citizen of the state of New York with its principal place of business in New York, New York. At all times relevant to this Complaint, L'Oréal USA, Inc. has transacted business in this judicial district and throughout the United States, including New York and Florida.

## JURISDICTION AND VENUE

11.      This Court has personal jurisdiction over Defendant in this matter.  The acts and omissions giving rise to this action occurred in the state of New York. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state,

and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of New York, during the relevant time period, at which time Defendant was engaged in business activities in the state of New York.

12.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and o n e  Defendant are citizens of different states.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.    Under 28 U.S.C. § 1391, venue is proper in the Southern District of New York because Defendant conducted business in this District, Defendant maintains its principal place of business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

**FACTS COMMON TO ALL CLASS MEMBERS**

**A.    The EverSleek Keratin Caring Products**

14.    Defendant manufactures, advertises, markets, distributes and sells the EverSleek Keratin Caring Products, as part of its L'Oreal Paris brand.

15.    The EverSleek Keratin Caring Products are marketed as a two-step system, and are sold at retail stores such as CVS, Ulta, Target, Walgreens, and Walmart, and through e-commerce websites such as Ulta.com, Walmart.com, Walgreens.com, CVS.com, Amazon.com and Target.com.

4

16.    Defendant manufactures, advertises, markets, distributes and sells the EverSleek Keratin Caring Products throughout the United States.

**B.  Defendant's False and Deceptive Advertising and Labeling of the Products**

17.    In violation of 21 U.S.C. § 362(a) and 21 C.F.R. § 701.1(b), Defendant has consistently, falsely and deceptively advertised and labeled the EverSleek Keratin Products in an effort to make consumers believe that the Products contain keratin.

18.    The front label of the EverSleek Keratin Products induced customers into thinking that Keratin is a key ingredient. However, keratin is not an ingredient of the Products.

19.    Since launching the EverSleek Keratin Products, Defendant has conveyed a uniform, deceptive message to consumers throughout the United States, including the states of New York and Florida, that the Products are formulated with keratin and will confer the claimed benefits of keratin treatments.

20.    These uniform deceptive claims have been made and repeated across a variety of media including Defendant's Product labels, websites and online promotional materials, and at the point-of-purchase, where they cannot be missed by consumers. In truth, Defendant's claims that the EverSleek Keratin Caring Products contain keratin is false, misleading, and deceptive because the Products do not contain keratin or confer the claimed benefits of keratin.

21.    Defendant's uniformly false, misleading, and deceptive marketing campaign begins with the name of the Product line and each individual Product. Defendant intentionally and deceptively incorporated the word "keratin" into the name "Keratin Caring," notwithstanding the fact that the Products contain no keratin. A reasonable consumer reading the names of the EverSleek Keratin Caring Products would be misled and would reasonably

believe that each Product contains keratin and that each Product provides the claimed benefits of keratin.

22.    21 U.S.C.S. § 362(a) deems a cosmetic misbranded if the "labeling is false or misleading in any particular."

23.    21 C.F.R. § 701.1(b) establishes that the labeling of a cosmetic "may be "misleading" where it designates the cosmetic "by a name which includes or suggests the name of one or more but not all . . . ingredients".

24.    Here, Defendant's conduct is all the more misleading, as they have chosen to label the EverSleek Keratin Caring Products with brand and Product names which blatantly suggest the inclusion of an ingredient – keratin – which is not found in the Products at all.

25.    The front labels of the EverSleek Keratin Shampoo and Conditioner prominently state "Keratin Caring" in a large bold font and "Shampooing Soin Keratin"/ "Revitalisant Soin Keratin" written in French with slightly smaller and slightly less bold print leading consumers to believe the Products contain keratin when they do not.





26.    The labels on the back of each Product perpetuate the false, deceptive and misleading representations and claims. Specifically, the back labels of the EverSleek Keratin Caring Shampoo and Conditioner  display "EverSleek Keratin Caring System" in dark bold letters.

27.    Defendant reinforces the false and deceptive claims that the Products contain keratin on their website and the websites of various authorized retailers which utilize Defendant's uniform and deceptive marketing and branding:

### EverSleek Keratin Caring System Shampoo

EverSleek Keratin Caring Shampoo with sunflower oil for chemically straightened hair cares for the essential protein and keratin that is found in hair. Repairs, smoothes and improves hair's texture. Our smoothing shampoo is especially gentle on processed hair. There are no harsh sulfates, salts or surfactants that can strip, dull and damage hair. Experience a purely sensorial lush, luxurious lather and a fresh aromatic fragrance that blooms. Ever, our original 100% sulfate-free haircare. Pure respect for your hair.

### How to Use

Apply to wet hair and massage gently into a thick lather. Rinse thoroughly. Follow with EverSleek Keratin Caring conditioner.

https://www.lorealparisusa.com/products/hair-care/products/shampoo/eversleek-keratin-caring-shampoo.aspx?shade=keratin-caring-shampoo (last visited April 11, 2019).

### EverSleek Keratin Caring System Condition

EverSleek Keratin Caring Conditioner with sunflower oil for chemically straightened hair cares for the essential protein and keratin that is found in hair. Repairs, smoothes and improves hair's texture. Our smoothing conditioner is especially gentle on processed hair. There are no harsh sulfates, salts or surfactants that can strip, dull and damage hair. Experience a purely sensorial lush, luxurious lather and a fresh aromatic fragrance that blooms. Ever, our original 100% sulfate-free haircare. Pure respect for your hair.

### How to Use

After using EverSleek Keratin Caring shampoo, apply to wet hair and massage gently. Leave on for 1-2 minutes. Rinse.

https://www.lorealparisusa.com/products/hair-care/products/conditioner/eversleek-keratin-caring-conditioner.aspx?shade=keratin-caring-conditioner (last visited April 11. 2019).

### D.  The Impact of Defendant's Misleading and Deceptive Advertising

28.    Defendant intended for consumers to rely upon the representations on the Product labels, and reasonable consumers did, in fact, so rely.  These representations are often the only source of information consumers can use to make decisions concerning whether to buy and use such products.

29.    Consumers lack the ability to test or independently ascertain the authenticity of product claims of everyday consumer products, especially at the point-of-sale. Reasonable customers must therefore rely on consumer product companies, such as Defendant, to honestly represent their Products and the Product attributes on the Product labels.

30.    At all relevant times, Defendant directed the above-referenced Product labels, statements, claims and innuendo, including that the Products contained keratin and provided the claimed benefits of keratin, to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the Products.

31.    Plaintiff and Class Members did reasonably rely on Defendant's Product labels, statements, claims and innuendos in deciding to purchase the Products and were thereby deceived.

32.   As a result of Defendant's deceptive labeling and/or marketing campaign, Defendant has caused Plaintiff and putative Class Members to purchase the EverSleek Keratin Caring Products, which do not contain keratin and are incapable of providing the claimed benefits of keratin. Plaintiff and putative Class Members have been harmed, as they would not have

purchased the Products or would have paid less for them had they known the Products did not contain keratin.

33.    As a result of Defendant's misconduct, Defendant was able to sell the EverSleek Keratin Caring Products to hundreds of thousands of consumers throughout the United States— including Plaintiff and putative Class Members—and realized sizeable profits.

34.    Plaintiff and putative Class Members were harmed and suffered actual damages in that Plaintiff and putative Class Members did not receive the benefit of their bargain as purchasers of the EverSleek Keratin Caring Products, which were represented as containing keratin and, thereby, providing the claimed benefits of keratin. Instead, Plaintiff and putative Class Members are worse off after purchasing the Products, as Plaintiff and putative Class Members paid for Products that do not contain keratin and are incapable of providing the claimed benefits of keratin.

35.    Defendant developed and knowingly employed a labeling, advertising and/or marketing strategy designed to mislead consumers into believing that the EverSleek Keratin Caring Products contain keratin and are capable of providing the claimed benefits of keratin.

36.    The purpose of Defendant's scheme is to increase sales and enhance Defendant's profits.

37.    As the manufacturers, marketers, advertisers, distributors and/or sellers of the EverSleek Keratin Caring Products, Defendant possesses specialized knowledge regarding the Products and the content of the ingredients contained therein.

38.    Defendant knew or should have known, but failed to disclose, that the Products do not actually contain keratin and are incapable of providing the claimed benefits of keratin, as labeled and/or marketed by Defendant.

39.    Plaintiff and putative Class Members were, in fact, misled by Defendant's labeling, representations and marketing of the Products.

40.    The absence of keratin and the failure of the EverSleek Keratin Caring Products to provide the claimed benefits of keratin leave no reason to purchase these Products at all, since other proven and less-expensive products exist.

41.    The EverSleek Keratin Products are defined as "cosmetics" under 21 U.S.C.S. § 321(i) of the Federal Food Drug & Cosmetic Act ("FDCA").

42.    Defendant's deceptive statements violate 21 U.S.C.S. § 362(a), which deems a cosmetic product misbranded when the label contains a statement that is "false or misleading in any particular."

43.    The FDA promulgated regulations for compliance with the FDCA at 21 C.F.R. §§ 701 *et seq.* (for cosmetics).

44.    The introduction of misbranded cosmetics into interstate commerce is prohibited under the FDCA and all parallel state statutes cited in this Complaint.

45.    Florida's deems a cosmetic misbranded "if its labeling is false or misleading in any particular." Fla. Stat. § 499.009(1).

46.    New York state law also finds a cosmetic misbranded if "its labeling is false or misleading in any particular." NY Educ. L § 6815(2)(a).

47.    Plaintiff and putative Class Members would not have purchased the EverSleek Keratin Caring Products, or would have paid less for them, had they known the Products did not contain keratin and are unable of providing the claimed benefits of keratin, or had they known about Defendant's scheme to sell the Products as misbranded cosmetics.

## PLAINTIFF'S FACTUAL ALLEGATIONS

48.     After viewing in-store and online advertisements and Product packaging for the EverSleek Keratin Care System regarding its purported contents and benefits, Plaintiff purchased the EverSleek Keratin Care Shampoo for $7.99 and the EverSleek Keratin Care Conditioner for $7.99 at Walgreens and began using the Product.  Plaintiff has also purchased the Products at Walmart.

49.     As a result of Defendant's misrepresentations and omissions, Plaintiff purchased the Products because she reasonably believed they contained keratin and were capable of providing the claimed benefits of keratin. Plaintiff would not have purchased the Products, or would have paid less for it, had she known that it did not contain keratin.

50.     Plaintiff had not previously used the EverSleek Keratin Caring Products.

51.     Plaintiff followed the instructions on Products packaging.

52.     After several weeks of use, Plaintiff noticed that her hair texture was no different than it was before use of the Products.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action on behalf of herself and the following Class pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3).  Specifically, the Class is defined as:

> All persons in the United States and its territories who purchased EverSleek Keratin Care Shampoo or EverSleek Keratin Care Conditioner during the relevant statute of limitations.

54.     Plaintiff also brings this action on her own behalf and on behalf of the following Subclasses pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and/or 23(b)(3).  Specifically, the Subclasses are defined as:

**New York Subclass**

All persons who reside in the state of New York and who purchased EverSleek Keratin Care Shampoo or EverSleek Keratin Care Conditioner during the relevant statute of limitations.

**Florida Subclass**

All persons who reside in the state of Florida and who purchased EverSleek Keratin Care Shampoo or EverSleek Keratin Care Conditioner during the relevant statute of limitations.

55.     Excluded from the Class are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release with Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of Defendant or any entity in which Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

56.     Excluded from the Subclasses are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release with Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of Defendant or any entity in which Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

57.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

58.     Plaintiff reserves the right to amend the definitions of the Subclasses if discovery or further investigation reveals that the Subclasses should be expanded or otherwise modified.

59.     **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

60.     **Predominance of Common Questions of Law and Fact.**   Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

   a.  Whether the EverSleek Keratin Caring Products contain any actual keratin;

   b.  Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the EverSleek Keratin Caring Products are deceptive, unfair or misleading;

   c.  Whether Defendant's acts, omissions or misrepresentations of material facts violate certain state deceptive practice acts, including those of New York and Florida;

   d.  Whether Defendant breached express warranties in connection with the Products;

   e.  Whether Defendant breached implied warranties in connection with the Products;

   f.  Whether Defendant's acts, omissions or misrepresentations of material facts constitute fraud;

   g.  Whether Defendant's acts, omissions or misrepresentations of material facts constitute a breach of contract or common law warranty;

   h.  Whether Plaintiff and putative Class and Subclass Members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts, omissions or misrepresentations of material facts;

   i.  Whether Defendant was unjustly enriched at the expense of Plaintiff and putative Class and Subclass Members in connection with the Products;

j.  Whether Plaintiff and putative Class and Subclass Members are entitled to monetary damages and, if so, the nature of such relief; and

k.  Whether Plaintiff and putative Class and Subclass Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

61.  Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Class and Subclasses, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class and Subclasses as a whole.  In particular, Defendant has manufactured, marketed, advertised, distributed and sold Products that are deceptively misrepresented as containing keratin when, in fact, they do not.

62.  **Typicality.**  Plaintiff's claims are typical of the claims of the Members of the Class and Subclasses, as each putative Class and Subclass Member was subject to the same uniform deceptive misrepresentation regarding the purported keratin content of the Products. Plaintiff share the aforementioned facts and legal claims or questions with putative Class and Subclass Members, and Plaintiff and all putative Class and Subclass Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all putative Class and Subclass Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive misrepresentations regarding the purported keratin content.

63.  **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the putative Class and respective Subclasses. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Class and Subclass Members.

64.    **Insufficiency of Separate Actions.** Absent a class action, Class and Subclass Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Class and Subclasses satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

65.    **Declaratory and Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Class and Subclasses, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class and Subclass Members as a whole.

66.    **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.    The damages suffered by each individual putative Class and Subclass Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

b.    Even if individual Class and Subclass Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.    The claims presented in this case predominate over any questions of law or fact affecting individual Class and Subclass Members;

d.    Individual joinder of all putative Class and Subclass Members is impracticable;

e.    Absent a Class, Plaintiff and putative Class and Subclass Members will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and putative Class and Subclass Members can seek redress for the harm caused by Defendant.

67.    In the alternative, the Class and Subclasses may be certified for the following reasons:

      a.    The prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudication with respect to individual Class and Subclass Members, which would establish incompatible standards of conduct for Defendant;

      b.    Adjudications of individual Class and Subclass Members' claims against Defendant would, as a practical matter, be dispositive of the interests of other putative Class and Subclass Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class and Subclass Members to protect their interests; and

      c.    Defendant has acted or refused to act on grounds generally applicable to the putative Class and Subclasses, thereby making appropriate final and injunctive relief with respect to the putative Class and Subclasses as a whole.

**<u>COUNT I</u>**
**Breach of Express Warranty**
**N.Y. U.C.C. §2-313**
**(On Behalf of the New York Subclass)**

68.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 67 as if fully set forth herein.

69.     Plaintiff brings this cause of action on behalf of herself and the New York Subclass against Defendant.

70.    Plaintiff and New York Subclass Members purchased the EverSleek Keratin Caring Products either directly from Defendant or through retailers such as Ulta, Walmart, CVS, Target, and Walgreens, among others.

71.    Defendant is and was at all relevant times a "merchant" under N.Y. U.C.C. §2-313.

72.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller expressly warranted that the EverSleek Keratin Caring Products were fit for their intended purpose by making the express warranties that:

18

    a.   EverSleek Keratin Care Shampoo contained keratin to smooth hair.

    b.   EverSleek Keratin Care Conditioner contained keratin to smooth hair.

73.   Defendant made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, New York Subclass Members and Defendant.

74.   In fact, EverSleek Keratin Caring Products are not for such purpose because the express warranties are false and misleading misrepresentations.

75.   Defendant breached these warranties and/or contract obligations by placing the Products into the stream of commerce and selling them to consumers, when the Products do not contain keratin or the claimed benefits of keratin. The absence of keratin renders the Products unfit for their intended use and purpose and substantially and/or completely impairs the use and value of the Products.

76.   The lack of keratin at issue herein existed when the EverSleek Keratin Caring Products left Defendant's possession or control and were sold to Plaintiff and New York Subclass Members.  The absence of keratin was not discoverable by Plaintiff and New York Subclass Members at the time of their purchase of the Products.

77.   Defendant was provided notice of the aforementioned breaches of the above-described warranties via notice letters served upon L'Oreal's corporate headquarters, pursuant to N.Y. U.C.C. § 2-607(3)(a).

78.   Plaintiff and the New York Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the EverSleek Keratin Caring Products if they had known the truth about the Products.

## COUNT II
### Breach of Contract/Common Law Warranty
### (On Behalf of the Class and State Subclasses)

79.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 78 as if fully set forth herein.

80.     Plaintiff brings this cause of action on behalf of herself and the Class, the Florida Subclass, and the New York Subclass against Defendant.

81.      Plaintiff and New York Subclass Members purchased the EverSleek Keratin Caring Products either directly from Defendant or through retailers such as Ulta, Walmart, CVS, Target, and Walgreens, among others.

82.     Defendant expressly warranted that the Products were fit for their intended purpose in that the Products were formulated with keratin.

83.     Defendant made the foregoing described express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class and Subclass Members and Defendant.

84.     Defendant breached the warranties and/or contract obligation by placing the Products into the stream of commerce and selling them to consumers, when the Products do not contain keratin and do not have the properties they were represented to possess. Due to the absence of keratin, the EverSleek Keratin Caring Products are unfit for their intended use and purpose.   The absence of keratin substantially and/or completely impairs the use and value of the Products.

86.      The absence of keratin at issue herein existed when the EverSleek Keratin Caring Products left Defendant's possession or control and were sold to Plaintiff and Class and Subclass Members. The absence of keratin and impaired use and value of the EverSleek Keratin

Caring Products were not discoverable by Plaintiff and New York Subclass Members at the time of their purchase of the Products.

87.    As a direct and proximate cause of Defendant's breach of contract, Plaintiff and the New York Subclass Members were harmed because they would not have purchased the EverSleek Keratin Caring Products if they had known the truth about the Products.

## COUNT III
### Fraud/Fraudulent Concealment
### (On Behalf of the Nationwide and State Subclasses)

88.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 87 as if fully set forth herein.

89.    Plaintiff brings this cause of action on behalf of herself, the Class and the New York and Florida Subclasses against Defendant.

89.    As alleged herein, Defendant knowingly made material misrepresentations and omissions regarding the EverSleek Keratin Caring Products on its website, in Product advertisements, and/or on the Product labeling and packaging.

90.    Defendant made these material misrepresentation and omissions in order to induce Plaintiff and putative Class Members to purchase the Products.

91.    Rather than inform consumers that the EverSleek Keratin Caring Products do not contain keratin or have the claimed benefits of keratin, Defendant used the word "keratin" in the name of the EverSleek Keratin Caring Product line and in the names of the individual Products in order to mislead consumers that the Products contain keratin and will confer the benefits of keratin.

92.    The EverSleek Keratin Caring Products do not contain any keratin and are incapable of providing the claimed benefits of keratin.  Defendant fraudulent concealed this fact from Plaintiff and the Class members.

21

93.    Defendant knew the EverSleek Keratin Caring Products did not contain keratin and were incapable of providing the claimed benefits of keratin, but nevertheless made such representations through their use of the word "keratin" in the name of the Product line and individual Products, as well as through the marketing, advertising and Product labeling. In reliance on these and other similar misrepresentations, Plaintiff and putative Class Members were induced to, and did, pay monies to purchase the Products.

94.    Had Plaintiff and putative Class Members known the truth about the EverSleek Keratin Caring Products, including that they did not contain any keratin, they would not have purchased the Products.

95.    As a proximate result of the fraudulent conduct of Defendant, Plaintiff and the putative Class paid monies to Defendant, through their regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## COUNT IV
### Unjust Enrichment
### (On Behalf of the Nationwide Class and State Subclasses)

96.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 95 as if fully set forth herein.

97.    Plaintiff brings this cause of action on behalf of herself, the Class and the New York and Florida Subclasses against Defendant.

98.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased EverSleek Keratin Caring Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products, which do not contain any keratin, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

99.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

100.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

101.    Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the EverSleek Keratin Caring Products on the same terms or for the same price had they known that the Products did not contain keratin and were not fit for their intended use.

102.    Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the EverSleek Keratin Caring Products actually contained keratin and were capable of providing the claimed benefits of keratin as represented by Defendant in advertising, on Defendant's websites, and on Product labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

103.    Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

104.    When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the EverSleek Keratin Caring Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Products.

105.    As a proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

### COUNT V
**Violation of Florida Deceptive and Unfair Trade Practices Act**
**("FDUTPA").Fla. Stat. Ann. § 501.201 *et seq.***
**Unlawful Acts and Practices**
**(On Behalf of the Florida Subclass)**

106.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 105 as if fully set forth herein.

107.    Plaintiff brings this cause of action on behalf of herself, the Class and the Florida Subclass against Defendant.

108.    Plaintiff and Florida Subclass Members who purchased Defendant's EverSleek Keratin Caring Products suffered a substantial injury by virtue of buying Products that misrepresented and/or omitted the true contents and benefits. Had Plaintiff and Florida Subclass Members known that Defendant's materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the EverSleek Keratin Caring Products and that the Products did not contain keratin, they would not have purchased the Products.

109.    Defendant's actions alleged herein violate the laws and public policies of Florida and the federal government as set out in the proceeding paragraphs of this Complaint.

110.    There is no benefit to consumers or competition in allowing Defendant to deceptively market, advertise, package and label its EverSleek Keratin Caring Products.

111.    Plaintiff and the Florida Subclass Members who purchased Defendant's Products had no way of reasonably knowing that the Products were deceptively marketed, advertised,

packaged and/or labeled and did not contain keratin.  Thus, Florida Subclass Members could not have reasonably avoided the injury they suffered.

112.    The gravity of the harm suffered by Plaintiff and Florida Subclass Members who purchased Defendant's' EverSleek Keratin Caring Products outweighs any legitimate justification, motive or reason for marketing, advertising, packaging and/or labeling the Products in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiff and Florida Subclass Members.

113.    The above-described acts and omissions of Defendant, in disseminating said misleading and deceptive statements to consumers throughout the state of Florida, including to Plaintiff and Florida Subclass Members, were and are likely to deceive reasonable consumers by obfuscating the true nature and lack of keratin in Defendant's EverSleek Keratin Caring Products, and thus were violations of, Fla. Stat. Ann. § 501.204 *et seq*.

114.    Plaintiff and the Florida Subclass are entitled to recover actual damages to the extent permitted by law, in an amount to be proven at trial, and are entitled to equitable relief to enjoin Defendant on terms that the Court considers reasonable and appropriate.

## COUNT VI
### Violation of New York General Business Law
### New York GBL § 349, *et. seq*.
### (On Behalf of the New York Subclass)

115.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 114 as if fully set forth herein.

116.    Plaintiff brings this cause of action on behalf of herself and the New York Subclass against Defendant.

117.    Defendant's foregoing acts and practices, including its omissions, were directed at consumers.

118.    Defendant's foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the Products' ingredients and functionality. Defendant omitted material facts regarding the Products by failing to disclose that the Products do not contain any keratin. Rather than disclose this information, Defendant named the Product line "EverSleek Keratin Caring" and misrepresented that the Products were formulated with keratin, and capable of providing a keratin treatment.

119.    The EverSleek Keratin Caring Products contain no keratin and are incapable of providing a keratin treatment and/or the claimed benefits of keratin as represented by Defendant. Defendant did not disclose this information to consumers.

120.    Defendant's foregoing deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of New York's General Business Law section 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, *et. seq.,* in that:

> a.  Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Products under the Product line and name, when they knew, or should have known, that the Products did not contain keratin and could not provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendant when used as intended;
>
> b.  Defendant knew the absence of keratin in the Products was unknown to and would not be easily discovered by Plaintiff and New York Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products; and
>
> c.  Plaintiff and the New York Subclass Members were deceived by Defendant's failure to disclose and could not discover the absence of keratin in the Products or that the Products could not provide the claimed benefits of keratin prior to purchasing the Products.

121.    Plaintiff and the New York Subclass Members suffered damages when they purchased the Products. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff and the New York Subclass Members who were unaware that the Products did not contain keratin and could not provide a keratin treatment and/or the claimed benefits of keratin as represented when they purchased the Products.

122.    Defendant's foregoing deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and putative New York Subclass Members, would not have purchased its Products had they known about the absence of keratin in the Products or the fact that the Products cannot provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendant.

123.    As a direct and proximate result of Defendant's deceptive acts and practice including its omissions, Plaintiff and New York Subclass Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

124.    In addition, Plaintiff and New York Subclass Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**<u>COUNT VII</u>**
**Violation of the Florida False Advertising Statute**
**Fla. Stat. § 817.41**
**(On Behalf of the Florida Subclass)**

125.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 124 as if fully set forth herein.

126.    Plaintiff brings this cause of action on behalf of herself and the Florida Subclass against Defendant.

127.    Plaintiff and the Members of the Florida Subclass have standing to pursue a cause of action for false advertising under Fla. Stat. § 817.41, *et. seq.* because Plaintiff and the Members of the Florida Subclass have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

128.    Specifically, Defendant engaged in the following deceptive and misleading conduct in violation of the Florida False Advertising Law:

  a.  Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Products under the EverSleek Keratin Caring Product line and name, when it knew, or should have known, that the Products did not contain keratin and could not provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendant when used as intended; and

  b.  Defendant knew the absence of keratin in the EverSleek Keratin Caring Products was unknown to and would not be easily discovered by Plaintiff and Florida Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products;

  c.  Defendant intended that its misrepresentation about the Products would induce consumers like Plaintiff and the Florida Subclass Members to purchase these products for the claimed benefits of keratin; and

  d.  Plaintiff and the Florida Subclass Members were deceived by Defendant's failure to disclose and could not discover the absence of keratin in the EverSleek Keratin Caring Products or that the Products could not provide the claimed benefits of keratin prior to purchasing the Products.

129.    Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and putative Florida Subclass Members, would not have purchased its Products had they known about the absence of keratin in the Products or the fact that the

Products cannot provide a keratin treatment and/or the claimed benefits of keratin as represented by Defendant.

130.   Defendant's actions violate, Fla. Stat. § 817.41 *et seq*.

131.   As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Florida Subclass Members who paid for the Products.

**COUNT VIII**
**Violation of New York General Business Law**
**New York GBL § 350, *et. seq*.**
**(On Behalf of the New York Subclass)**

132.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 124 as if fully set forth herein.

133.   Plaintiff brings this cause of action on behalf of herself and the New York Subclass against Defendant.

134.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising   includes   "advertising, including labeling, of a commodity … if such advertising is misleading   in   a   material   respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…." N.Y. GEN. BUS. LAW § 350-a.

135.   Defendant caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the Class members.

136.   Defendant has violated this law because it misrepresented that the Products contained keratin and omitted from the labelling that the products did not contain keratin.  The

misrepresentations and omission were material and likely to, and did deceive, Plaintiff and the Class members.

137.    Plaintiff and the Class members have suffered injury, including the loss of money or property, as a result of Defendant's false advertising. In purchasing the Products, Plaintiff and the Class members relied on the misrepresentations and/or omissions of Defendant with respect to the quality and contents of the Products. Defendant's representations turned out to be untrue because the Products did not contain keratin or any of the property of keratin meant to and advertised by Defendant as beneficial for the hair. Had Plaintiff and the Class members known this, they would not have purchased the Products and/or paid as much for them.

138.    Accordingly, Plaintiff and the Class members were damaged as they overpaid for their Products and did not receive the benefit of the bargain for their Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated Class and Subclass Members, prays for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class and Subclasses, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendant bear the costs of any notice sent to the Class and Subclasses;

C. Awarding Plaintiff and Class and Subclass Members actual damages, restitution and/or disgorgement.

D. Awarding Plaintiff and Class and Subclass Members statutory damages, as provided by the applicable state consumer protection statutes invoked above;

E. Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

F. Awarding Plaintiff and Class and Subclass Members restitution of the funds that unjustly enriched Defendant at the expense of Plaintiff and Class and Subclass Members.

G.  Awarding Plaintiff and Class and Subclass Members pre- and post-judgment interest.

H.  Awarding attorneys' fees and litigation costs to Plaintiff and Class and Subclass Members; and

I.  Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: May 14, 2019

Respectfully submitted,

*/s Taylor C. Bartlett*
Taylor Bartlett
**HENINGER GARRISON DAVIS, LLC**
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: 800-241-9779
Fax: 205-380-8085
Email: taylor@hgdlawfirm.com

Caroline Hollingsworth*
**HENINGER GARRISON DAVIS, LLC**
2224 First Ave. North
Birmingham, AL 35203
Tel: 800-241-9779
Fax: 205-380-8071
Email: caroline@hgdlawfirm.com

*Pro Hac Vice Motion to be Submitted