**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------ x

TAMMY DEVANE, *on behalf of herself and all others*
*similarly situated,*

                                Plaintiff,

      -against-

L'ORÉAL USA, INC.,

                         Defendant.

------------------------------------------ x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

19 Civ. 4362 (GBD)

GEORGE B. DANIELS, United States District Judge:

        Plaintiff, on behalf of herself and all others similarly situated, brings this action for breach of express warranty, breach of implied warranty, fraud, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), New York General Business Law ("NYGBL"), Florida False Advertising Statute ("FFAS"), and Alabama Deceptive Trade Practices Act ("ADTPA") against L'Oréal USA, Inc. (Am. Compl., ECF No 12 at ¶¶ 69–132.) Specifically, Plaintiff claims that due to Defendant's "misconduct and misrepresentations" in its branding of its "EverSleek Keratin Caring" products (the "Products"), she and similarly situated class members have suffered economic injuries. (*Id.* at ¶ 8.) Defendant moves to dismiss Plaintiff's amended complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Notice of Mot. to Dismiss, ECF No. 13.) Defendant's motion to dismiss for failure to state a claim is GRANTED.

## I.   FACTUAL BACKGROUND

        Defendant manufactures, distributes, and sells a line of hair care products throughout the United States. (Am. Compl. at ¶¶ 14–16.) At issue in this litigation is the advertising and description on the labels of the Products. (*See id.* at ¶¶ 25–27.) Plaintiff alleges that she purchased the Products,

"rel[ying] upon [Defendant's advertisements] all prior to purchasing the [P]roducts," and that Defendant "falsely and deceptively advertised and labeled the . . . Products in an effort to make consumers believe that the Products contain Keratin." (*Id.* at ¶ 16.)  In fact, the products do not contain Keratin, which is a "a protein naturally present in human hair, skin and nails." (*Id.* at ¶ 3; *see also* Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Mem. in Supp."), ECF No. 14 at 2–3.) Defendant argues that it is unreasonable to assume that the Products themselves contain keratin, as they specifically state that the Products "car[e] for the essential protein and keratin that is found in hair." (*See* Mem. in Supp. at 8–11.)

Both parties submit images of the shampoo and conditioner bottles. (*See* Am. Compl. at 8– 9; Mem. in Supp., Ex. A (Images of EverSleek Keratin Caring Labels ("Images of Labels")), ECF No. 14-1.)  The fronts of both bottles read, in relevant part, "Keratin Caring" and "100% Vegan." (*See* Am. Compl. at 8–9; Images of Labels at 1, 3.)  The backs of the bottles include ingredient lists—which do not include keratin. (*See* Images of Labels at 2, 4.)  Moreover, the backs of the labels again indicate that the Products are "Vegan," and further that they include "[n]o animal derived ingredients or by-products" and the "Formula [is] not tested on animals." (*Id.*)  The labels also describe the function of the Products, including that they "gently cleanse[] chemically straightened hair while caring for the essential protein and keratin that is found in the hair." (*Id.*)

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6) Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[1]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

### B.  Claims Sounding in Fraud and the Rule 9(b) Heightened Pleading Standard.

Under New York law, "a claim for fraud consists of five elements: '(1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance.'" *Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 462 (S.D.N.Y. 2009) (quoting *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F.Supp.2d 275, 286 (S.D.N.Y. 1998)).

In addition to meeting the requirements of Rule 12(b)(6), a plaintiff alleging fraud or asserting a claim premised on an allegation of fraud must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires such a party to "state with

---

[1] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To meet this standard, "a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 Fed. Appx. 744, 747 (2d Cir. 2009) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  In other words, a plaintiff alleging a cause of action sounding in fraud must set forth with sufficient particularity the "who, what, when, where[,] and how of the alleged fraud."  *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (citation omitted).

## C.  Claims Under FDTUPA.

"FDUTPA is a broad, prophylactic statute that prohibits unfair or deceptive business practices and imposes a general duty to deal fairly with consumers."  *Rubin v. MasterCard Int'l, LLC*, 342 F.Supp.2d 217, 219 (S.D.N.Y. 2004) (citation omitted).  Under FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."  *Id.* at 219–20 (citing Fla. Stat. § 501.204).  "While Florida's Legislature has not specifically defined 'unfair or deceptive acts,' it has directed that the Statute 'be construed liberally . . . protect the consuming public . . . from those who engage in . . . deceptive or unfair acts or practices in the conduct of any trade or commerce.'"  *Id.* (citing Fla. Stat. § 501.202; *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th Dist. Ct. App. 2001).  The Second Circuit has held that it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

For a plaintiff to succeed on a FDTUPA claim, he or she "must allege that the conduct complained of was unfair or deceptive, and must . . . show that [they were] actually aggrieved by the alleged conduct in the course of trade or commerce."  *Gorran v. Atkins Nutritionals, Inc.*, 464

F.Supp.2d 315, 328 (S.D.N.Y. 2006) (citation omitted). Stated otherwise, a plaintiff must prove the following three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."[2] *Id.* (quoting *Rollins, Inc. v. Butland*, 932 So.2d 1172, 1180 (Fla. 2d Dist. Ct. App. 2006)).

When an FDTUPA claim sounds in fraud, it is subject to the heightened pleading standard of Rule 9(b), meaning that plaintiff's must state his or her claim with particularity. *See In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13 MD 2450 (KMK), 2015 WL 7018369, at *16 (S.D.N.Y. Nov. 12, 2015).

### D. Claims Under FFAS.

Under the FFAS, "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement . . . designed and intended for obtaining money or property under false pretenses." Fla. Stat. § 817.41, *et. seq.* To prevail under the FFAS, a plaintiff must prove that the defendant made a false or misleading representation. *See Hasemann v. Gerber Products Co.*, No. 15 Civ. 2995 (MKB), 2016 WL 5477595, at *15 (E.D.N.Y. Sep. 28, 2016) (citing *Joseph v. Liberty Nat'l Bank*, 873 So. 2d 384, 387–88 (Fla. Dist. Ct. App. 2004)). Moreover, courts apply the "reasonable consumer" test to claims made under the FFAS. *See id.* at *17 (citing *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359 (S.D. Fla. 2014)). Indeed, to make out a claim under FFAS, a plaintiff must demonstrate that "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018). Additionally, claims made under FFAS are also subject to the

---

[2] While the statute does not define what actual damages are, such damages have been determined by "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* (citation omitted).

heighted pleading standard of Rule 9(b). *See Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (applying Rule 9(b) to Florida's false advertising statute).

### E. Claims Under NYGBL § 350.

NYGBL § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law. § 350 (McKinney 2019). Under the statute, "false advertising" includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material false respect," considering "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law. § 350-a (McKinney 2019).

In order to assert a claim under § 350 in the Second Circuit, "a plaintiff must allege that a defendant (1) has engaged in consumer-oriented conduct, (2) that is materially misleading, and (3) that plaintiff has suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). In a consumable goods case, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Id.* at 302.

### F. Claims Under ADTPA.

The ADTPA makes it illegal, *inter alia*, to (1) misrepresent that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities"; (2) misrepresent that "goods or services are of a particular standard, quality, or grade," or are "of a particular style or model"; and (3) "engag[e] in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5(5), (7), (27) (2006). A plaintiff may allege an ADTPA claim based on "concealment, suppression, or omission," *Reid v. Unilever U.S.*,

*Inc.*, 964 F.Supp.2d 893, 916 (N.D. Ill. 2013), so long as he or she can demonstrate "some knowledge of false or deceptive conduct on the part of the wrongdoer." *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996); *see also, e.g.*, *Lynn v. Fort McClellan Credit Union*, No. 11-CV-2904 (VEH), 2013 WL 5707372, at *7 (N.D. Ala. Oct. 21, 2013) (dismissing ADPTA claim for failure to show "any intent by [the defendant] to deceive" the plaintiff).

"Alabama case law 'interpreting the scope of the specific unlawful practices described in [the Act]' is scant," however, "'the entire statutory scheme' makes clear that the Act's provisions 'are designed to have limited application, and are intended to replace the common law and statutory actions for fraud only in specifically designated situations.'" *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 406 (S.D.N.Y. 2017) (quoting *Beaird*, 685 So. 2d at 744). Additionally, where an ADPTA claim sounds in fraud, a plaintiff must satisfy the Rule 9(b) heightened pleading standard. *Reid*, 964 F.Supp.2d at 916.

### III.   PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FAILS TO STATE A CLAIM

#### A. Plaintiff's Claims for Breaches of Express and Implied Warranty are Dismissed.

Plaintiff alleges that Defendant "expressly warranted" and "promised or affirmed" "through its labeling and advertisement" that the Products "contained keratin to smooth hair." (Am. Compl. ¶¶ 73, 84.) She further asserts that "[t]he absence of keratin was not discoverable by Plaintiff and class members at the time of their purchase of the Products," and that "the goods do not conform to the promises or affirmation of fact made on the products' labels." (*Id.* at ¶¶ 77, 86.) Defendant argues that these claims must fail because Plaintiff's interpretations of and arguments regarding Defendant's marketing is unreasonable as a matter of law. (*See* Mem. in Supp. at 6–11.)

This Court analyzes whether a practice is deceptive or misleading through the "reasonable consumer" standard, *i.e.*, by analyzing whether the practice would be "likely to mislead a reasonable

consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300 (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)).   Under this standard, Plaintiff must credibly allege "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Jessani*, 744 F. App'x at 19 (citation omitted).  Plaintiff has not met this standard.

First, both the front and back of the Products' labels specifically say that the Products are vegan. (*See* Images of Labels at 1–4.)  Plaintiff, who affirmatively acknowledges in the amended complaint that keratin is a chemical in the body, (Am. Compl. ¶ 3), does not address the discrepancy created by her conflicting assertions that (1) the Products are vegan and (2) the Products contain keratin, a human chemical.  Second, none of the ingredients listed on either bottle includes keratin as an ingredient.  (*See* Images of Labels at 2, 4.)  Under similar circumstances, the Second Circuit has previously ruled that it is not reasonable to assume that a product contains a certain ingredient when it is not listed in the ingredient list.  For example, in *Jessani*, the Second Circuit examined a brand of olive oil product that was labeled as "Truffle Flavored," but did not contain truffles.  The Circuit held that it was "simply not plausible that a significant portion of the general consuming public acting reasonably would conclude" that the olive oil was made with truffles particularly because "the product's ingredient list contains no reference to the word 'truffle' and the primary label describes the product only as being 'Truffle Flavored.'"  *Id.* at 19-20. (citation omitted).  Conveniently, the amended complaint here does not address the ingredients list, nor does it reconcile the fact that a simple reading of the ingredients list would have made it clear that the Products do not contain keratin.

Finally, the Products' description itself states, "EverSleek Keratin Caring system with sunflower oil, gently cleanses chemically straightened hair while *caring for the essential protein and*

*keratin that is found in hair.*" (Images of Labels at 2, 4 (emphasis added).) Again, the amended complaint does not address that a simple reading of the label would have resolved the issues she raises. The Product's labels state multiple times—including on the center of the front labels, as well as in small font on the backs of the labels—that the Products are "Keratin *Caring.*" (Images of Labels at 1–4 (emphasis added).) It is reasonable to understand this to mean that it *cares* for the keratin already found in the hair. This, read in conjunction with the fact that the ingredient list is extremely clear, leads to the conclusion that Plaintiff has therefore not met the burden of demonstrating that a reasonable consumer could find that the Products claim to contain keratin.[3]

## B. Plaintiff's Claim for Fraud is Dismissed.

Plaintiff fails to meet the heightened pleading standard of a claim sounding in fraud. Here, Plaintiff simply alleges that Defendant intentionally used the word "keratin" in its Product labels "in order to mislead consumers that the Products contain keratin and will confer the benefits of keratin." (Am. Compl., ¶ 95.) Plaintiff further alleges that Defendant acted fraudulently because it "knew the [Products] did not contain keratin and were incapable of providing the claimed benefits of keratin." (*Id.* ¶ 97.) Plaintiff merely makes conclusory allegations regarding Defendant's knowledge and intentions, but does not provide any specific factual allegations leading to these conclusions. Indeed, other than reasserting the fact that the Products' labels use the phrase "keratin caring," Plaintiff does

---

[3] While Plaintiff argues that Defendant's analysis "presupposes a higher level of knowledge on the part of the reasonable consumer than is appropriate," (Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, ECF No. 116 at 10), this argument is unavailing. Even if the average reasonable consumer is unaware of what the word "vegan" means, or did not previously know that keratin is found in one's hair, this nonetheless does not counter the number of times that the label makes it clear that (1) keratin is not an ingredient, and (2) the Products are intended to care for the keratin in one's hair. It is unreasonable—as Plaintiff attempts—to suggest that a consumer is not required to read a product's label to obtain information. Reasonableness cannot be based solely on what the consumer might have known prior to picking up the Products and examining the labels.

not describe how Defendant fraudulently represented that the Products actually contained keratin. Plaintiff's claim for fraud and/or fraudulent concealment is therefore dismissed.

### C. Plaintiff's Claims for Violation of FDUTPA and FFAS are Dismissed.

Plaintiff asserts a claim under FDUTPA based on her allegation that "Defendant's Products were deceptively marketed," and that if this were not the case, she and the Florida subclass "would not have purchased the [P]roducts." (Am. Compl. ¶¶ 102, 105.) Plaintiff alleges that she and the Florida subclass are therefore are entitled to "actual damages . . . to be proven at trial." (*Id.* ¶ 108.) Plaintiff asserts essentially identical allegations in her claim under FFAS. (*Compare id.* ¶¶ 100–108 *with id.* ¶¶ 109–115.)   Indeed, Plaintiff asserts that Defendant's "deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances." (*Id.* ¶ 113.)

Again, Plaintiff asserts conclusory allegations with little detail, and cannot demonstrate that the language on the labels was deceptive. Indeed, both claims require that Plaintiff (1) meet the Rule 9(b) heightened pleading standard, and (2) demonstrate that a reasonable consumer would not have understood that the Products do not contain keratin. Therefore, both claims under Florida law are dismissed.

### D. Plaintiff's Claim for Violation of NYGBL § 350 is Dismissed.

Plaintiff is unable to assert a claim under NYGBL for similar reasons. As described above, she is unable to meet the reasonable consumer standard, as required by the Second Circuit. The Second Circuit and New York courts have held that conduct is misleading when it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen*, 498 F.3d at 126 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995)).

Moreover, there is also a geographic requirement for Plaintiff's New York claim. "The New York Court of Appeals in *Goshen v. Mutual Life Insurance Company of New York* appears to have interpreted the limiting phrase 'in this state' in sections 349(a) and 350 [of NYGBL] to require that 'the transaction in which the consumer is deceived . . . occur in New York.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)) (alterations in original). Thus, at least some portion of the transaction or alleged deception at issue must have occurred in New York state in order to bring a NYGBL claim. Because Plaintiff has not plead any of the alleged transactions took place in New York, this factor alone constitutes grounds for a dismissal of their § 350 New York claim.[4]

### E.  Plaintiff's Claim for Violation of ADTPA is Dismissed.

Considering the limited case law in this Circuit offering guidance on the proper interpretation of an ADTPA claim, this Court turns to guidance from other Circuits that have considered these issues. For example, an Illinois district court has found that the legislature intended that courts construing Section 8-19-5 of the Alabama Code give "due consideration and great weight . . . where applicable" to the federal courts relation to Section 5(a)(1) of the Federal Trade Commission Act (the "FTCA"). *Suchanek v. Sturm Foods, Inc.*, No. 11 Civ 565 (NJR) (RJD), 2018 WL 6617106, at *5 (S.D. Ill. July 3, 2019) (quoting Ala. Code § 8-19-6 (1981)). As such, the Illinois district court in *Suchanek* reviewed the ADTPA claim by considering the elements necessary to bring a claim under the FTCA within the Seventh Circuit. Additionally, the Northern District of Illinois has found that it was appropriate to apply the Rule 9(b) heightened pleading standard to an ADTPA claim. *Lake v. Unilever U.S.*, Inc., 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013).

---

[4] Because this Court finds that Plaintiff is unable to meet the reasonable consumer standard and also fails to meet the geographic requirement needed to assert a claim under NYGBL, this Court need not specifically address whether Plaintiff may have been able to meet the other prongs required to assert a claim under NYGBL.

Following the lead of the Seventh Circuit, this Court considers those elements necessary to make out a claim under the FTCA in the Second Circuit. Specifically, within this Circuit, to succeed in bringing a claim for a deceptive act or practice under § 5(a)(1) of the FTCA, a party must allege: (1) "a representation, omission, or practice," that is (2) "likely to mislead consumers acting reasonably under the circumstances," and that (3) the alleged "representation, omission, or practice is material." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 168 (2d Cir. 2016) (citations omitted) (alterations in original). Moreover, "[t]he deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably." *Id.* Considering these factors, Plaintiff's claim under the ADTPA claim fails, because again, she is unable to meet the reasonable consumer standard. Moreover, and as described above, if this Court were to apply the Rule 9(b) heightened pleading standard, as applied by the Northern District of Illinois in *Lake*, Plaintiff's claim would fail on that ground as well. Therefore, Plaintiff's ADTPA claim is dismissed.

## IV.    CONCLUSION

Defendant's motion to dismiss, (ECF No. 13), is GRANTED. The Clerk of Court is directed to close this motion accordingly.

Dated: New York, New York
      September 14, 2020

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge